[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2010
JOHN LEY
CLERK

No. 07-15811
Non-Argument Calendar

_____

D. C. Docket No. 07-00065-CR-ORL-22KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD RAY HARRIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 16, 2010)

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before CARNES, BARKETT and PRYOR, Circuit Judges.

CARNES, Circuit Judge:

The Supreme Court vacated our judgment in this case, United States v. Harris, 305 Fed. App'x 552 (11th Cir. 2008), and remanded it to us for further consideration in light of Johnson v. United States, 559 U.S. —, 130 S.Ct. 1265 (2010). Harris v. United States, 130 S.Ct. 1734 (2010).

**I.**

At the center of this case is the Armed Career Criminal Act (ACCA), which imposes a 15-year mandatory minimum prison sentence on a person who has been convicted of being a felon in possession of a firearm, if the person has three earlier convictions "for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). A "violent felony" under the ACCA is a crime punishable by a prison term of more than one year that also:

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 924(e)(2)(B).

The outcome of this case depends on whether Donald Ray Harris' Florida state conviction for sexual battery of a child under the age of sixteen is a violent felony under the residual clause in § 924(e)(2)(B)(ii), which is the part of the

2

statutory provision beginning with "otherwise." Harris' crime is not burglary, arson, extortion, or an offense involving the use of explosives. It does meet the plain language requirement of "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Even though it fits in the plain language of the statute, we must apply the holding of Begay v. United States, 553 U.S. 137, 143, 128 S.Ct. 1581, 1585 (2008), that strict liability crimes are not "roughly similar" to burglary, arson, extortion, or an offense involving the use of explosives and therefore do not come within the residual clause. See id. at 145, 128 S.Ct. at 1586–87. Before we get to our discussion of that rough similarity requirement for residual clause crimes, we follow the Supreme Court's instruction to reconsider this case in light of Johnson, 559 U.S. —, 130 S.Ct. 1265, which involves the first definition of "violent felony" in the ACCA.

## A.

In Johnson the Supreme Court considered whether the defendant's earlier Florida simple battery conviction was a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i)—one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Johnson contended that his 2003 battery conviction could not be counted to

3

classify him as an armed career criminal under § 924(e)(2)(B)(i). 130 S.Ct. at 1268–69.

Under the Florida statute that Johnson had been convicted of violating, a battery could be committed under that statute in any one of three ways: by intentionally causing bodily harm to the victim, or by intentionally striking the victim, or by actually and intentionally touching the victim. Id. at 1269; see Fla. Stat. § 784.03(1)(a). The Supreme Court determined that nothing in the record of Johnson's 2003 battery conviction established that he did anything more than the least of those three things: "'actually and intentionally touch[ing]' the victim."[1] 130 S.Ct. at 1269 (quoting Fla. Stat. § 784.03(1)(a) (brackets omitted)). As a result, Johnson's battery conviction could only be counted for the purpose of

---

[1] The Court emphasized that in cases like Johnson's, where the statutory language does not unambiguously establish whether the underlying crime of conviction involved violent force, it is still permissible to look to the record of the conviction to determine if violent force was an element of the underlying crime:

When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the "'modified categorical approach'" that we have approved, Nijhawan v. Holder, 557 U.S. —, —, 129 S.Ct. 2294, 2302, 174 L.Ed.2d 22 (2009), permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.

Id. at 1273. Doing that did not help in the Johnson case, however, because the record did not reveal which alternative means of committing the offense had been the basis for conviction. See id. at 1269.

classifying him as an armed career criminal if "'[a]ctually and intentionally touch[ing] another person, Fla. Stat. § 784.03(1)(a), (2) (2003), 'has as an element the use . . . of physical force against the person of another.' 18 U.S.C. § 924(e)(2)(B)(i)." Id. at 1268. The Court held that it did not because "physical force" in the context of the ACCA's § 924(e)(2)(B)(i) means "violent force." Id. at 1271. The result was that Johnson's battery conviction could not be counted for ACCA purposes. See id. at 1269, 1274.

The government had asked the Supreme Court to remand the Johnson case to this Court so that we could determine whether Johnson's battery conviction was a violent felony under the residual clause in 18 U.S.C. § 924(e)(2)(B)(ii). Id. at 1274. The reasons the Court declined to do so are that "[t]he Government did not keep this option alive because it disclaimed at sentencing any reliance upon the residual clause," and this Court had already implicitly decided that the residual clause did not apply in those circumstances. Id. That same residual clause is at the center of the present case, and we must determine if it applies to Harris' Florida state court conviction for sexual battery of a child under sixteen years of age. Before doing that, we will set out the procedural facts that frame this issue.

**B.**

Harris was convicted by a jury of being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1).  Harris, 305 Fed. App'x at 553.  He was sentenced to 240 months in prison as an armed career criminal.  Id.  Harris achieved that status by being convicted twice for selling cocaine and once for sexual battery of a child under the age of sixteen in violation of Fla. Stat. § 800.04(3) (1996) (amended 1999).[2]  Id.  The government proved all three crimes "by submitting certified copies of Harris' convictions, which were based on guilty pleas."  Id. at 553–54.

One issue we decided in reviewing Harris' sentence was whether his sexual battery conviction under Fla. Stat. § 800.04(3) was a violent felony within the meaning of § 924(e)(2)(B)(i).  See id. at 554–56.  Harris had been convicted under the 1996 version of § 800.04(3), which provided:

> 800.04. Lewd, lascivious, or indecent assault or act upon or in presence of child
>
> A person who:
> . . .
>
> (3) Commits an act defined as sexual battery under s. 794.011(1)(h) upon any child under the age of 16 years . . . is guilty of a felony of the second degree . . .

Id. at 555 (quoting Fla. Stat. § 800.04(3) (1990–1996)).  That version of the statute

---

[2] The relevant statutory provision has since been rewritten and renumbered.  See Fla. Stat. § 800.04(4) (2008).  We cite here to the 1996 version of the statute, under which Harris was convicted.

also provided that "[u]nder § 794.011(1)(h), 'Sexual battery means oral, anal, or vaginal penetration by, or union with, the sexual organ of another.'" Id. at 556. We noted that "[i]n his arguments to the district court Harris repeatedly referred to his crime as 'statutory rape,'" but that did not do him any good because the district court concluded that statutory rape is a crime of violence. Id. at 555. We reached the same conclusion and held that "under this Court's minimal physical contact requirement, a violation of Fla. Stat. § 800.04(3) (1996) is a violent felony." Id. at 556.

Under the Supreme Court's Johnson decision, in order for a crime to be a § 924(e)(2)(B)(i) violent felony, it must involve "physical force," which "means violent force—that is force capable of causing physical pain or injury to another person." Johnson, 130 S.Ct. at 1271. The government now concedes that Harris' sexual battery conviction is not a "violent felony" under § 924(e)(2)(B)(i), and we accept that concession for purposes of this case.[3]

Left for us to decide is whether Harris' conviction under § 800.04(3)

---

[3] The Florida statute on which Harris' conviction was based could be violated by the "union with . . . the sexual organ of another," and under Florida law union means contact. See Dorch v. State, 458 So. 2d 357, 358 (Fla. 1st DCA 1984) ("In this context it is clear that the Legislature intended that 'union' mean something other than penetration. We agree with the trial court that contact alone, between the sexual organ of the offender and the mouth, anus, or vagina of the victim, is sufficient to convict."). Harris' position is that because the statute could be violated by mere contact, a conviction under it, without more, is not enough to constitute a violent felony for ACCA purposes under § 924(e)(2)(B)(i). The government does not disagree.

qualifies as a "violent felony" under the residual clause contained in §

924(e)(2)(B)(ii)'s definition of the term. The residual clause defines "violent

felony" as a crime punishable by imprisonment for more than one year that is not

"burglary, arson, or extortion" and does not involve use of explosives, but

"otherwise involves conduct that presents a serious potential risk of physical injury

to another." 18 U.S.C. § 924(e)(2)(B)(ii).

Harris contends that the government has waived any reliance on the residual

clause because the last time this case was before us the government represented

(correctly under the law of the circuit as it then existed) that it was unnecessary for

us to consider that clause. See Br. of Appellee (filed Aug. 20, 2008) at 18

("Because Harris's conviction for violating section 800.04(3) falls squarely within

the ambit of 18 U.S.C. § 924(e)(2)(B)(i), resort to the 'residual provision' of 18

U.S.C. § 924(e)(2)(B)(ii) is unnecessary. . . ."). Harris also argues that the

government should be barred from relying on the residual clause because it did not

ask the district court to rule in the alternative that the residual clause applied when

that court was addressing the physical force required under § 924(e)(2)(B)(i).

The government never disclaimed reliance on the residual clause in this

Court, but simply pointed out to us that under the state of the law at the time there

was no need for us to reach the issue of whether the residual clause applied. We

8

agreed and did not reach the issue.[4]  Much the same thing happened in the district

court, which concluded as a matter of law that statutory rape was a violent felony

under § 924(e)(2)(B)(i), rendering it pointless to decide anything about §

924(e)(2)(B)(ii) and its residual clause.

Even though the district court did not reach the residual clause issue, we can

still decide it.  See United States v. Al-Arian, 514 F.3d 1184, 1189 (11th Cir. 2008)

("[W]e may affirm for any reason supported by the record, even if not relied upon

by the district court.") (quotation marks omitted); see also United States v. Day,

465 F.3d 1262, 1264 (11th Cir. 2006) ("This court reviews de novo whether a

particular conviction is a violent felony for purposes of the ACCA.").[5]

---

[4] The last time around our only observation related to the residual clause was this:

> Harris' arguments based on Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581,
> 170 L.Ed.2d 490 (2008) are not relevant because Begay explicitly addressed only
> § 924(e)(2)(B)(ii) (any felony that "is burglary, arson, or extortion, involves use
> of explosives, or otherwise involves conduct that presents a serious potential risk
> of physical injury to another"), not § 924(e)(2)(B)(i) (any felony that "has as an
> element the use, attempted use, or threatened use of physical force against the
> person of another."). Thus, the Supreme Court's holding that DUI was not a
> violent felony under clause (ii) has no bearing on whether statutory rape is a
> violent felony under clause (i).

Harris, 305 Fed. App'x at 556 n.1.

[5] This is not a case in which the government is seeking a remand to the district court so
that it can present additional evidence that the predicate offense qualifies as a violent felony.  Cf.
United States v. Canty, 570 F.3d 1251, 1257 (11th Cir. 2009) (concluding that, in the
circumstances of that case, "the Government is not entitled to a remand so that it can present
additional evidence and seek additional findings of fact and conclusions of law to support the
ACCA enhancement when it failed to offer such evidence and seek those findings and
conclusions during the initial sentencing hearing and did not object to the manner in which the

## II.

Three Supreme Court decisions guide our analysis of whether a crime is a violent felony under the ACCA's residual clause. See United States v. Harris, 586 F.3d 1283, 1288 (11th Cir. 2009).[6] Here is how we go about deciding that issue in each case that presents it to us:

> As the Court instructed us in James [v. United States, 550 U.S. 192, 198, 127 S.Ct. 1586, 1591 (2007)], we begin with a categorical approach to this crime. We read the face of [the relevant statute] itself to discern the crime as it is ordinarily committed. Necessarily, we consider whether the crime poses a "serious potential risk of physical injury" that is similar in degree to the risks posed by the enumerated crimes. As in Begay [v. United States, 553 U.S. 137, 143, 128 S.Ct. 1581, 1585 (2008)], we examine next whether that crime was similar in kind and in degree to the enumerated crimes. Finally, under Begay and Chambers [v. United States, — U.S. —, 129 S.Ct. 687, 692 (2009)], we ask whether the conduct at issue in the statute is "purposeful, violent and aggressive," or, whether it is a more passive crime of inaction, such as the failure to report to a penal institution or driving under the influence of alcohol.

Id.

In James the Supreme Court considered whether attempted burglary under Florida law was a violent felony within the ACCA's residual clause. See James,

---

sentence was imposed"); but see United States v. Martinez, No. 08-13846, — F.3d —, 2010 WL 1994672, at *2 (11th Cir. May 19, 2010) ("Canty does not hold (nor could it) that an appellate panel was barred from fashioning an appropriate mandate, including allowing the government to present additional evidence on remand for resentencing. We read it to say only that a broad mandate for de novo resentencing was inappropriate in that case.").

[6] The "Harris" in that case is not the same person as the appellant here.

550 U.S. at 198, 127 S.Ct. at 1591. The Court took into account the fact that the specifically listed crimes in the first part of § 924(e)(2)(B)(ii) — burglary, arson, extortion, and crimes involving the use of explosives —"while not technically crimes against the person, nevertheless create significant risks of bodily injury or confrontation that might result in bodily injury." Id. at 199, 127 S.Ct at 1592. The Court reasoned that "Congress' inclusion of a broad residual provision in clause (ii) indicates that it did not intend the preceding enumerated offenses to be an exhaustive list of the types of crimes that might present a serious risk of injury to others and therefore merit status as a § 924(e) predicate offense." Id. at 200, 127 S.Ct. at 1593.

The Court also explained in James that "[t]he specific offenses enumerated in clause (ii) provide one baseline from which to measure whether other similar conduct 'otherwise . . . presents a serious potential risk of physical injury.'" Id. at 203, 127 S.Ct. at 1594. However, "[n]othing in the language of § 924(e)(2)(B)(ii) rules out the possibility that an offense may present 'a serious risk of physical injury to another' without presenting as great a risk as any of the enumerated offenses." Id. at 209, 127 S.Ct. at 1598; but see Begay, 553 U.S. at 143, 128 S.Ct. at 1585 ("[T]o give effect to every clause and word of this statute, we should read the examples as limiting the crimes that clause (ii) covers to crimes that are

11

roughly similar, in kind as well as in degree of risk posed, to the examples

themselves." (quotation marks and alteration omitted)).[7]

The James Court reasoned that the categorical approach does not require

"that every conceivable factual offense covered by a statute must necessarily

present a serious potential risk of injury before the offense can be deemed a violent

---

[7] The Ninth Circuit has recognized how difficult it can be to determine whether an offense should be classified as a violent crime:

> We have a whole body of caselaw dealing with what constitutes a crime of violence for purposes of federal criminal and immigration law; among the activities we've considered are burglary, statutory rape, involuntary manslaughter, possession of an unregistered short-barreled shotgun, reckless vehicular assault, vehicular manslaughter while intoxicated, kidnapping, stalking, arson, escape, conspiracy to interfere with interstate commerce by robbery, grand theft, mayhem, recklessly setting fire to forest land, indecent liberties with a minor, carrying a gun while committing a drug offense and being an accessory after the fact to commission of murder for hire. And we often disagree. See, e.g., United States v. Chambers, 473 F.3d 724, 726 (7th Cir. 2007) (escape is a crime of violence); United States v. Piccolo, 441 F.3d 1084, 1088 (9th Cir. 2006) (no it's not); United States v. Asberry, 394 F.3d 712, 715–16 (9th Cir. 2005) (statutory rape is a crime of violence); id. at 722 (Bea, J., concurring) (no way); United States v. Wenner, 351 F.3d 969, 974 (9th Cir. 2003) (burglary is not a crime of violence); id. at 977 (Wallace, J., dissenting) (is too); United States v. Johnson, 448 F.3d 1017, 1018 (8th Cir. 2006) (grand theft auto is); Van Don Nguyen v. Holder, 571 F.3d 524, 525 (6th Cir. 2009) (au contraire); Malta-Espinoza v. Gonzales, 478 F.3d 1080, 1084 (9th Cir. 2007) (stalking isn't); id. at 1088 (Duffy, J., dissenting) ("I respectfully dissent."); United States v. Saavedra-Velazquez, 578 F.3d 1103, 1110 (9th Cir. 2009) (Reinhardt, J.) (attempted robbery is); id. (Reinhardt, J., specially concurring) (or is it?); United States v. Trinidad-Aquino, 259 F.3d 1140, 1146 (9th Cir. 2001) (drunk-driving-resulting-in-bodily-injury is a gentle crime); id. at 1147 (Kozinski, J., dissenting) (Bull!).

Bull v. City and County of San Francisco, 595 F.3d 964, 985–86 (9th Cir. 2010) (Kozinski, C.J., joined by Gould, J., concurring). Yeah.

felony."  Id. at 208, 127 S.Ct. at 1597.  Instead:

> [T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.  One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury—for example, an attempted murder where the gun, unbeknownst to the shooter, had no bullets.  Or, to take an example from the offenses specifically enumerated in § 924(e)(2)(B)(ii), one could imagine an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments. In both cases, the risk of physical injury to another approaches zero. But that does not mean that the offenses of attempted murder or extortion are categorically nonviolent.

Id. (citation omitted).

Harris hypothesizes that under Florida law a person could be convicted of the crime of sexual battery of a child under the age of sixteen "even when the act was unintentional and the victim factually consented to the act."  Supp. Br. of Appellant at 12.  He points out the possibility of "factual consent" because legal consent is impossible under the statute.  See Fla. Stat. § 800.04 (1996) ("Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section.").  It makes no difference for conviction purposes if the perpetrator believes that the victim has in fact "consented."  See Jones v. State, 640 So.2d 1084, 1086 (Fla. 1994) ("The legislature enacted section 800.04 based on a morally neutral judgment that sexual intercourse with a child under the age of

13

sixteen, with or without consent, is potentially harmful to the child." (quotation marks and citation omitted)); cf. United States v. Chavarriya-Mejia, 367 F.3d 1249, 1251 (11th Cir. 2004) ("Because Kentucky law presumes that underage children are incapable of consent, statutory rape necessarily involves a sexual act performed 'against' the child."). A person could be convicted of violating Fla. Stat. § 800.04(3) without the actual use of physical force on the victim because the victim "factually consented." That alone, however, does not automatically mean that the crime is outside of the scope of the residual clause. "As long as [a violation of Fla. Stat. § 800.04(3) is] an offense . . . that, by its nature, presents a serious potential risk of injury to another" it meets the threshold requirements. James, 550 U.S. at 209, 127 S.Ct. at 1597 (emphasis added). So we must first determine whether the § 800.04(3) offense meets those requirements.

We have already half-answered that question. In United States v. Rutherford, 175 F.3d 899 (11th Cir. 1999), we held that a violation of Fla. Stat. § 800.04 "'involves conduct that presents a serious potential risk of physical injury to another.'" Id. at 905 (quoting U.S.S.G. § 4B1.2). We reached that holding in the context of the career offender sentencing guideline definition, but it involved language that is the same as that in the residual clause we are applying. Id.

The defendant in Rutherford had been convicted of violating the 1993

14

version of Fla. Stat. § 800.04, which contained a provision identical to the one that

Harris was convicted of violating in 1996. The 1993 version of the statute

provided that a person commits a second degree felony if he:

> (1) Handles, fondles, or assaults any child under the age of 16 years in a lewd, lascivious, or indecent manner;
> (2) Commits actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, actual lewd exhibition of the genitals, or any act or conduct which simulate[s] that sexual battery is being or will be committed upon any child under the age of 16 years or forces or entices the child to commit any such act;
> (3) Commits an act define[d] as sexual battery under s. 794.011(1)([h]) upon any child under the age of 16 years; or
> (4) Knowingly commits any lewd or lascivious act in the presence of any child under the age of 16 years, without committing the crime of sexual battery. . . .

Id. at 905 n.3 (quoting Fla. Stat. § 800.04 (1993)).[8]

The record did not indicate which subsection of § 800.04 Rutherford had

been convicted of violating, but we concluded that it did not matter. Id. at 904–05.

We reasoned that the conduct described in all of that statute's subsections

"involves a substantial risk that physical force may be used against the victim in

the course of committing the offense." Id. at 905 (quoting Ramsey v. INS, 55

---

[8] The offense described in § 800.04(3) (1993) is the same as Harris' 1996 offense of conviction at issue in the present case. Sexual battery was also defined the same way under the 1993 statute that was incorporated by reference in § 800.04(3). See Fla Stat. § 794.011(1)(h) (1993) ("The term 'sexual battery' means oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object . . . .").

15

F.3d 580, 583 (11th Cir. 1995).  We held, therefore, that the defendant's prior

conviction under Fla. Stat. § 800.04 was properly considered a prior conviction for

career offender purposes under U.S.S.G. § 4B1.1, regardless of which subsection

of the Florida statute had been violated.  See id.; see also United States v. Ivory,

475 F.3d 1232, 1236–37 (11th Cir. 2007) ("Alternatively, and as an independent

basis for our holding, we conclude that second degree rape of a minor, under

Alabama law, at a minimum 'presents a serious potential risk of physical injury to

another,' as provided under § 4B1.2(a)(2).").[9]  We have already held, then, that an

offense under Fla. Stat. § 800.04 presents a serious risk of physical injury to

another.  Rutherford, 175 F.3d at 905; see also Ivory, 475 F.3d at 1238

(emphasizing that "sexual offenses against minors always present 'a substantial

risk that physical force will be used to ensure a child's compliance with an adult's

sexual demands,' and that 'physical injury need not be certain]for a crime to pose a

serious risk of physical injury . . . .'" (quotation marks and alteration omitted))

---

[9] In Ivory the defendant was convicted of second degree rape of a minor under Alabama law, which provided that a person committed that crime if:

> (1) Being 16 years old or older, he or she engages in sexual intercourse with a member of the opposite sex less than 16 and more than 12 years old; provided, however, the actor is at least two years older than the member of the opposite sex.

> (2) He or she engages in sexual intercourse with a member of the opposite sex who is incapable of consent by reason of being mentally defective.

Ivory, 475 F.3d at 1234 (quoting Ala. Code § 13A-6-62(a)).

(quoting United States v. Searcy, 418 F.3d 1193, 1197 (11th Cir. 2005)); see also

United States v. Coronado-Cervantes, 154 F.3d 1242, 1244 (10th Cir. 1998)

("Every published appellate decision which has considered applying the

'otherwise' clause in the context of sexual offenses involving minors has found a

'serious potential risk of physical injury' to the minors under U.S.S.G. §

4B1.2(1)(ii) and has held that the offenses at issue are 'crimes of violence.'"

(listing cases)). All of this leads us to conclude that sexual battery of a child under

sixteen in violation of Fla. Stat. § 800.04(3) (1996) is a crime that presents a

serious potential risk of physical injury.

**3.**

That would seem to be the end of the matter, but it is not. We must also

decide if a violation of Fla. Stat. § 800.04(3) (1996) is a crime "roughly similar, in

kind as well as in degree of risk posed" to burglary, arson, extortion, and crimes

involving the use of explosives. Begay, 553 U.S. at 143, 128 S. Ct. at 1585; see

also United States v. Harrison, 558 F.3d 1280, 1295 (11th Cir. 2009) ("To be sure,

the Supreme Court [in Begay] did not interpret the text of § 924(e)(2)(B)(ii) as

written, but rather infused a 'similar in kind' requirement onto it."). The Begay

Court concluded that DUI is different from the enumerated crimes of  burglary,

arson, extortion, and crimes involving the use of explosives, which "typically

involve purposeful, 'violent,' and 'aggressive' conduct." Begay, 553 U.S. at 144–45, 128 S.Ct. at 1586. The Court reasoned that DUI statutes, like the one it was considering, "typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." Id. at 145, 128 S.Ct. at 1586.

The Supreme Court explained that arson, burglary, extortion, or crimes involving the use of explosives "are associated with a likelihood of future violent, aggressive, and purposeful 'armed career criminal' behavior in a way that" strict liability crimes are not. Id. at 148, 128 S.Ct. at 1588; see also Chambers v. United States, — U.S. —, 129 S.Ct. 687, 692 (2009) (holding that failure to report to a penal institution is a crime that "amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion" (quotation marks omitted)). Despite what the plain language of the ACCA's residual clause might imply, the Supreme Court has concluded that it "covers only similar crimes" to the ones that are listed, "rather than every crime that 'presents a serious potential risk of physical injury to another.'" Begay, 553 U.S. at 142, 128 S. Ct. at 1585 (quoting 18 U.S.C. §

18

924(e)(2)(B)(ii)).

Picking up on the Begay yarn, Harris weaves the argument that his crime of sexual battery of a child under the age of sixteen is a strict liability crime with no mens rea requirement, just like the DUI crime in Begay. The government is unable to dispute that. See Fla. Stat. § 800.04; State v. Sorakrai, 543 So. 2d 294, 295 (Fla. 2d DCA 1989) ("It is our judgment that conduct violative of section 800.04 carries with it the same concept of 'strict liability' that has traditionally characterized 'statutory rape.' Thus, we are persuaded that section 794.021 forecloses [the defendant] from a defense based upon the victim's misrepresentation of her age or a bona fide belief that she was sixteen years or older."); Linehan v. State, 442 So. 2d 244, 247 (Fla. 2d DCA 1983) ("[T]here are three broad categories of crimes: (1) 'strict liability' crimes (e.g., DWI manslaughter or statutory rape) which are criminal violations even if done without intent to do the prohibited act; (2) general intent crimes; and (3) specific intent crimes." (citation omitted)); see also Feliciano v. State, 937 So. 2d 818, 820 (Fla. 1st DCA 2006) (explaining that since the nineteenth century, "Florida has recognized statutory rape as a strict liability crime.").

Instead, the government stakes is position on the proposition that sexual battery of a child under sixteen is a strict liability offense that is different in kind

from DUI offenses because it always involves a victim, always involves a perpetrator who is older and more mature than his victim and typically larger and stronger, as well. It argues that the deliberate commission of a sexual battery on a child under the age of sixteen indicates a likelihood that the perpetrator might deliberately harm others, which is the type of crime that the ACCA is designed to address. See Begay, 553 U.S. at 146, 128 S.Ct. at 1587 (reasoning that, unlike strict liability offenders, felons in possession of firearms who have committed earlier "crimes involving intentional or purposeful conduct" have a criminal history that "show[s] an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger"). The problem with the government's argument is that the Begay Court did not make distinctions among different kinds of strict liability offenses. See id. Instead, it held that because strict liability crimes generally do not "insist on purposeful, violent, and aggressive conduct" and can be committed without "any criminal intent at all," they are not violent felonies for purposes of the residual clause. Id. at 145, 128 S.Ct. at 1586–87.

We have not addressed the issue of how Begay applies to the crime of sexual battery of a child under the age of sixteen. Some other courts of appeals, however, have held that under Begay strict liability offenses involving sexual acts with

20

minors are not violent crimes under the ACCA's residual clause or the identically worded residual clause in the career offender guideline definition, U.S.S.G. § 4B1.2. See United States v. McDonald, 592 F.3d 808, 813–15 (7th Cir. 2010) (holding that violation of Wisconsin statute providing that "[w]hoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony'" is not a crime of violence under the residual clause in the career offender guideline definition); United States v. Thornton, 554 F.3d 443, 444, 449 (4th Cir. 2009) (holding that a violation of "Virginia's statutory rape offense, which makes it a crime to 'carnally know, without the use of force, a child' between thirteen and fifteen years of age" is not a violent felony under the ACCA's residual clause (alteration omitted)); United States v. Christensen, 559 F.3d 1092, 1093–94 (9th Cir. 2009) (holding that a violation of the Washington statute providing that "[a] person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim" is not a violent felony under the ACCA's residual clause). But see United States v. Daye, 571 F.3d 225, 233–34 (2d Cir. 2009) (holding without much explanation that even though the Vermont statute making it a felony to "engage[] in a sexual act" with a person

21

under the age of sixteen is a strict liability crime, it still "involves deliberate and affirmative conduct," which meets Begay's requirements for violent felonies under the ACCA's residual clause). The Seventh Circuit has concluded that "[b]y including only crimes that require 'purposeful' conduct, Begay has removed strict-liability crimes from the reach of the residual clause of the ACCA's definition of violent felony." McDonald, 592 F.3d at 814.

The difficulty in the present case lies in the fact that the Florida statute at issue covers a wide array of conduct. It is true that, as Harris asserts, Fla. Stat. § 800.04(3) "impose[s] strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." Begay, 553 U.S. at 145, 128 S. Ct. at 1586–87; see also id. at 146, 128 S. Ct. at 1587 ("[C]rimes involving intentional or purposeful conduct (as in burglary and arson) are different [from] DUI, a strict liability crime."). The Florida statute, however, also covers conduct that is undoubtedly intentional or purposeful. The statute provides no lower limit on the age of the victim, so it encompasses crimes for which no mistake about age could possibly be asserted by the perpetrator (even if mistake were a viable defense, which it is not); it covers, for example, sexual contact with a six-year-old child.

Regardless of the range of conduct covered by the statute, we have been

22

instructed to take a categorical approach, so that "[i]n determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Begay, 553 U.S. at 141, 128 S.Ct. at 1584; see also Chambers, — U.S. —, 129 S.Ct. at 690 (explaining that courts should consider a crime in the generic sense or "a crime as generally committed"); James, 550 U.S. at 202, 127 S.Ct. at 1594. Because the Florida statute, viewed categorically, imposes strict liability and covers such a broad range of conduct, we cannot say that a violation of it typically involves "purposeful, 'violent,' and 'aggressive' conduct," Begay, 553 U.S. at 144–45, 128 S. Ct. at 1586. For that reason, we conclude that a violation of Fla. Stat. § 800.04(3)(1996) generally—without further specifics—is not a crime of violence under the ACCA's residual clause. Harris' sentence must be set aside.

## III.

The convictions in this case are AFFIRMED, but the sentence is VACATED, and the case is REMANDED to the district court for re-sentencing consistent with this opinion.