[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12120
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cr-00265-GKS-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DALE BORDERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 24, 2014)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

In November 2012, Dale Borders pleaded guilty to one count of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a).  In February 2013, the district court sentenced Borders to 30-months imprisonment and ordered restitution of $365,605.31.  On appeal, Borders argues that the restitution order should be vacated and that his sentence was procedurally and substantively unreasonable.  After a careful review of the briefs and relevant precedent, we affirm his sentence and vacate the restitution order.

## I.

Some time around 2006 Borders came to the attention of Customs and Border Protection (CBP), and they sent him fifteen notices about importing counterfeit golf clubs.  Between 2009 and 2011 Borders received at least 37 shipments of DVDs from abroad.  CBP intercepted seven of the shipments and determined they were counterfeit.  Government agents went to Borders's home in August 2011 and after Borders consented to an interview, he surrendered a large number of counterfeit DVDs.  Although he told the agents he had no more pending orders for DVDs, days later the government seized two more boxes of counterfeit DVDs at the Orlando DHL hub.

The Probation Office stated that Borders had sold over 33,000 counterfeit DVDs.  It then calculated an infringement amount of $342,559.48 by multiplying the number of DVDs sold by their retail value.  Probation determined that

2

Borders's total offense level was 19 and his criminal history category was I, yielding a guideline range of 30 to 37 months. At sentencing, the government discussed the 18 U.S.C. § 3553(a) factors, noted that a guideline range sentence was appropriate in light of the nature and circumstances of the offense, and pointed out that Borders continued to import counterfeit goods after being put on notice by the government that his actions were illegal. The district court said Borders had demonstrated a "blatant disregard for the law," referencing the fifteen letters from CBP as well as cease and desist letters that Borders received and ignored. The district court sentenced Borders at the bottom of the guideline range, 30-months imprisonment, followed by one year of supervised release.

A few months after sentencing the district court held a restitution hearing. A government agent testified at the hearing about her methodology to determine the total value of the imported counterfeit goods. This included estimating the number of DVDs based on the weight of the shipments and multiplying that number of DVDs by the manufacturer suggested retail price. She admitted on cross-examination that no law enforcement officer actually saw the goods in the non-seized shipments, and she could not provide evidence that all of the imported counterfeit goods entered the stream of commerce. The victim companies did not provide any information regarding actual lost profits. The district court accepted the government's figures and ordered Borders to pay $365,605.31 in restitution.

3

Borders objected that the government failed to present information on the actual harm to the victim companies.

## II.

We normally review the legality of a restitution order de novo, the restitution amount for abuse of discretion, and the factual findings underlying a restitution order for clear error. United States v. Valladares, 544 F.3d 1257, 1269 (11th Cir. 2008). When reviewing for clear error, we will not reverse unless left with a "definite and firm conviction that a mistake has been committed." United States v. Robertson, 493 F.3d 1322, 1330 (11th Cir. 2007).

We may choose to accept a concession by the government about a district court's error, particularly when the law or record justifies it. Cf. Gilbert v. United States, 640 F.3d 1293, 1306 n.14 (11th Cir. 2011) (en banc) (discussing our discretion to accept the government's concession of a point on appeal); United States v. Harris, 608 F.3d 1222, 1226 (11th Cir. 2010) (exercising discretion to accept the government's concession of a particular issue on appeal).

"Restitution is not intended to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses." United States v. Huff, 609 F.3d 1240, 1249 (11th Cir. 2010) (internal quotation marks omitted). "Because a defendant's culpability will not always equal the victim's injury," the amount of loss for restitution purposes will not

always equal the amount of loss under the sentencing guidelines. Id. at 1247 (alteration and internal quotation marks omitted).

Because this Court has yet to address how a district court should calculate restitution for the sale of counterfeit goods in a published opinion, we look to persuasive authority from our sister circuits. In United States v. Beydoun, the Fifth Circuit held that the government must prove that counterfeit goods actually entered the marketplace to count towards the restitution calculation, and that restitution must be based on net lost profits, not total retail price. 469 F.3d 102, 107–08 (5th Cir. 2006). The Tenth Circuit has cited Beydoun approvingly and held that the government bears the burden to prove actual losses to victims for restitution. United States v. Hudson, 483 F.3d 707, 710 n.1 (10th Cir. 2007). The Eighth Circuit has held that a disgorgement approach does not apply in restitution; instead, restitution is limited to the actual loss to the victim. United States v. Chalupnik, 514 F.3d 748, 754–55 (8th Cir. 2008). And recently the D.C Circuit held that "the actual loss to the displaced (authentic) seller is the profit lost from the displaced sales—not the retail value of the goods that would have been sold." United States v. Fair, 699 F.3d 508, 514 (D.C. Cir. 2012).

Although we need not decide here the standard for calculating a victim's loss in this circumstance, it is clear that the government has not introduced sufficient evidence to determine the proper loss amount. At the restitution hearing,

the government failed to prove by a preponderance of the evidence that the counterfeit DVDs entered the marketplace.  See Robertson, 493 F.3d at 1333.  Neither did the government demonstrate the actual loss to the victim companies.  On appeal, the government has conceded that multiplying the estimated number of counterfeit DVDs by the full retail price was not an acceptable method for calculating restitution.  See Huff, 609 F.3d at 1249.  A remand here to recalculate the loss amount would be futile, as the government has already indicated that it lacks sufficient evidence to support restitution.  Therefore, we accept the government's concession and vacate the district court's restitution order.

### III.

We review the reasonableness of a sentence for abuse of discretion.  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).  We review a sentence for reasonableness using a two-step process, ensuring that the sentence is both procedurally and substantively reasonable.  United States v. Turner, 626 F.3d 566, 573 (11th Cir. 2010).

A sentence is procedurally unreasonable if the district court erred in calculating the guideline range, treated the Sentencing Guidelines as mandatory, failed to consider the § 3553(a) factors, selected a sentence based on clearly erroneous facts, or failed to adequately explain the sentence, including any deviation from the guideline range.  United States v. Rodriguez, 628 F.3d 1258,

6

1264 (11th Cir. 2010).   This district court is not required to explicitly state that it considered the § 3553(a) factors, as long as the court's comments demonstrate that it considered the factors when imposing sentence.  See United States v. Dorman, 488 F.3d 936, 944 (11th Cir. 2007).  The substantive reasonableness of a sentence is determined in light of the totality of the circumstances, and we will not vacate a sentence as substantively unreasonable unless we are left with the definite and firm conviction that the district court clearly erred in weighing the § 3553(a) factors and imposed a sentence outside the range of reasonable sentences.  Turner, 626 F.3d at 573.  "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors."  Id.

The district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2).  See 18 U.S.C. § 3553(a).  In imposing a particular sentence, the district court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. Id. § 3553(a)(1),(3)–(7).  In considering the § 3553(a) factors, the district court does not have to discuss each one explicitly.  United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).  "An acknowledgement the district court has

7

considered the defendant's arguments and the § 3553(a) factors will suffice." Id. "We will defer to the district's court judgment regarding the weight given to the § 3553(a) factors unless the district court made a clear error in judgment and imposed a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. (quotation marks omitted).

In this case, the district court provided a reasoned basis for its sentence and Borders fails to demonstrate any procedural error. Although Borders takes issue with the fact that the district court did not "expressly" reference the § 3553(a) factors at sentencing, a detailed explanation was not necessary based on the circumstances of this case. See Rita v. United States, 551 U.S. 338, 356–57, 127 S. Ct. 2456, 2468 (2007). The sentencing hearing transcript reflects that the district court listened to evidence regarding several of the § 3553(a) factors and considered Borders's disregard for the law and the need to promote deterrence for someone who continued knowingly importing counterfeit DVDs until he got caught. Dorman, 488 F.3d at 944. The district court's conclusion that Borders had a "blatant disregard for the law" touched on several of the § 3553(a) factors. As such, Borders's sentence was procedurally reasonable. Rodriguez, 628 F.3d at 1264.

As to the substantive reasonableness of Borders's sentence, his history of importing thousands of counterfeit DVDs after being notified of the illegality of

8

his conduct supports a sentence at the bottom of the guideline range.  See 18 U.S.C. § 3553(a)(1).  Borders demonstrated his disrespect for the law in many ways, including continuing to import counterfeit DVDs despite the fifteen customs notices and various cease and desist letters from victims.  The district court could reasonably have concluded that a 30-month period of incarceration would promote respect for the law, protect trademark holders and consumers from Borders's sale of counterfeit goods, and deter future criminal conduct in a manner that the repeated notices and letters had not.  Thus, Borders has not demonstrated that his sentence was procedurally or substantively unreasonable.

**VACATED IN PART, AFFIRMED IN PART.**

9